UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Gillman Capone, LLC
60 Highway 71, Unit 2
Spring Lake Heights, NJ 07762
(732) 661-1664
Attorney for Debtor-In-Possession
By: Marc C. Capone, Esq.

| | |
|---|---|
| In Re: | Case No.: **24-20881** |
| **Hirsch Glass Corp.** | Judge: **Mark E. Hall** |
| Debtors | Chapter: **11** |
| | Hearing Date: |

### SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of Hirsch Glass Corp., and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: Gillman Capone, LLC  60 Highway 71, Spring Lake Heights, NJ 07762**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR _____ IN COURTROOM No. 2 at 402 East State Street, Trenton, New Jersey 08608.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

January 20, 2025

Marc C. Capone, Esq
Gillman Capone, LLC
60 Highway 71
Spring Lake Heights, NJ 07762
(732) 528-1166
Fax (732)528-4458
mcapone@gbclawgroup.com

**TABLE OF CONTENTS**

                                                                              **Page**

**SUMMARY OF PLAN**...................................................................................... 6


**I. HISTORY OF BUSINESS OPERATIONS OF THE DEBTOR**   …………...…… 9

    1.1 Nature of Debtor's Business  ……………………………………… 9

    1.2  Description and History of the Debtor' Business  …………………......9

    1.3  Filing of Debtor's Chapter 11 Case  .................................................9

    1.4  Legal Structure and Ownership……………………....  …….............9

    1.5  Debtor's Assets…………….....................................................…...10

    1.6 Debtor's Liabilities……………….............................................…..  .11

    1.7  Current and Historical Financial Condition…………………………  12

    1.8  Events Leading to the Filing of Bankruptcy Case………………..……13

    1.9 Significant Events During the Bankruptcy Case…………………… …...13

    1.10     Projected Recovery of Avoidable Transfers…………….........……  . 14


**II.   THE CHAPTER 11 PLAN OF REORGANIZATION**…………………..……14

    2.1 Unclassified Claims ..................….  …………………………..……….15

        A. Administrative Expenses and Fees ……………….....................…16

        B. Priority Tax Claims........…………………………................. 17

    2.2  Classes of Claims and Equity Interests… …………………..……….17

        A. Classes of Secured Claims................................................…...18

        B. Classes of Priority Unsecured Claims…..…………................…38

        C. Class of General Unsecured Claims……………………………….39

        D. Class of Interest Holders......................................................42

    2.3  Estimated Number and Amount of Claims Objections   …………… 42

    2.4  Treatment of Executory Contracts and Unexpired Leases……………..44

    2.5  Means of Effectuating the Plan  ……...………………………….........45

    2.6  Payments………………………………………………………………46

    2.7  Post Confirmation Management………………………………………46

    2.8  Tax Consequences of Plan…………………………………………..46

    2.9  Projections in Support of Debtor's Ability to Make Payments

        Under the Proposed Plan……………………………………………46


**III.   FEASIBILITY OF PLAN**……..................................................…… …..47

    3.1 Ability to Fund Plan  .....…………………………………….........47

3.2  Ability to Make Future Plan Payments and Operate without Further
Reorganization………..…………....…………......………………
……47


**IV.  LIQUIDATION ANALYSIS**………………………………......…….…….....48


**V. DISCHARGE**…………………………..…………………………….…........48

**VI.    GENERAL PROVISIONS**……………….........……………….……48
6.1  Title to Assets………………………………………….49
6.2  Binding Effect……………………………………………49
6.3  Severability…………………………………………49
6.4  Retention of Jurisdiction by Bankruptcy Court………………………..49
6.5  Captions……………………………………………49
6.6  Modifications of Plan……………………………………..49
6.7  Final Decree……………………………………………50

**VII.    ATTACHMENTS**…………………………………………… 50
**VIII.  FREQUENTLY ASKED QUESTIONS**…………………………… 51
**IX.    DEFINITIIONS** ……………………………………………….. 52

### <u>SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS</u>

The Debtor's proposed Plan of Reorganization is as follows:

<u>Funding of Plan</u>:  Debtor will fund its Plan as follows:

1) Estimated Funds on hand upon Effective date of the Plan:  $ 527,341.39

2) Quarterly Payments over  a period of 36 months based on the Cash Flow Projection as follows:

- First 9 months (3 quarters) of 2025- Payments made to secured creditor Bank of America.
- Quarterly payments beginning end of 4th Quarter 2025 for remaining 9 quarters as follows:
  1. 4th Q 2025 $50,000.00
  2. 1st Q 2026 $0.00
  3. 2nd Q 2026- $180,000.00
  4. 3rd Q 2026- $180,000.00
  5. 4th Q 2026  $35,000.00
  6. 1st Q 2027 $30,000.00
  7. 2nd Q 2027 $100,000.00
  8. 3rd Q 2027 $ 150,000.00
  9. 4th Q 2027 $30,000.00

**Treatment of Classes of Creditors**:

**Administrative Claims**:
1) <u>Subchapter V Trustee</u> Fees and Expenses:  estimated at **$10,000.00** to be paid from funds on hand upon the first quarterly disbursement under the Plan.

2) Counsel Fees and Costs to <u>Gillman, Bruton & Capone, LLC</u> estimated to be **$75,000.00**, net of retainer paid prior to filing of **$30,000.00** leaving a balance **$45,000.00** to be paid from funds on hand upon the first quarterly disbursement once such fees have been approved by the Court.

**Secured Claim**s:

1)       **Bank of America** (lienholder-UCC on all business assets)- shall be paid its allowed secured claim with direct payments from the Debtor and/or related parties.

Current Balance: Prior to the filing of the Debtor's petition and the expiration of the Note, the Parties had entered into a Forbearance Agreement whereby the Debtor was to make monthly payments of $211,111.11 plus accrued interest to Bank of America beginning in November 2024 with the final balloon payment to be made on April 1, 2025.

The Debtor has made post-petition installment payments to Bank of America pursuant to the terms of the Forbearance Agreement.  Accordingly, pursuant to the terms of the Forbearance Agreement the Debtor believes there is a principal balance of $1,283,933.18 remaining on the Note.

Repayment: The secured claim shall be paid as follows:

(a) the balance remaining on the Note in the approximate amount of $1,283,933.18 shall be paid over a six (6) month period beginning in February 2025.

(b) Monthly principal payments of $211,111.11 plus accrued interest (based on the rate per year equal to the Term SOFR Daily Floating Rate plus the number of percentage points stated in the Transaction Summary)  shall be made directly by the Debtor to Bank of America.

(c) the final principal and interest payment shall be made in July 2025.

2)       **Bank of America**- (lienholder- UCC on all business assets)- Bank of America shall be paid its allowed secured claim with direct payments from the Debtor.

Current Balance: Prior to the filing of the Debtor's petition and the expiration of the Note, the Parties had entered into a Forbearance Agreement whereby the Debtor was to make regular monthly payments of  principal and interest to Bank of America beginning in November 2024 with the final balloon payment to be made on April 1, 2025.

Repayment: The secured claim shall be paid as follows:

(a) the balance remaining on the Note in the approximate amount of $44,255.29 shall be paid over a six (6) month period beginning in February 2025.
(b) the final principal and interest payment shall be made in July 2025.

3) **Ford Motor Credit**, lienholder on the following vehicles:
- 2019 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2019 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2023 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2023 Ford Explorer XLT
- 2021 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2021 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2019 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2019 Ford Transit Connect Van
- 2022 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2022 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2022 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2023 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2023 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2023 Ford F-550 Super Duty Rear Wheel Flatbed 4x2
- 2023 Ford Transit Connect

shall continue to receive regular monthly payments pursuant to the respective Notes directly from the Debtor.

4.) **Wells Fargo Bank N.A**., lienholder on Crown Forklift Cs-1000-60, shall continue to receive regular monthly payments pursuant to the Lease/Purchase Agreement directly from the Debtor.

5.) **Wells Fargo Bank N.A. d/b/a Wells Fargo Auto**- lienholder on 2022 Tesla Model Y, shall continue to receive regular monthly payments pursuant to the Note directly from the Debtor.

**Executory Contracts:**

The Debtor shall assume the Contracts and Leases specified on **Exhibit E** annexed hereto and will reject the Contracts and Leases specified on **Exhibit F** annexed hereto.

**Priority Creditors**

**1)** **Massachusetts Department of Revenue**-the pre-petition arrears have been brought current through post-petition payments by the Debtor and will continue to receive regular quarterly tax payments moving forward.

7

**General Unsecured Creditors:**

1)      **Convenience Class** non-contingent, liquidated, undisputed General Unsecured class totals $73,080.03. This class shall be paid in full within one year of the Effective Date of the Plan. This class shall be paid after payment of administrative and priority debts, on a pro-rata basis over the first six quarters of the Debtor's **36**-month plan. Disbursements shall be made to this class of creditor on a quarterly basis beginning approximately 270 days after the Effective Date of the Debtor's Plan. The final payment shall be made approximately 420 days from the Effective Date of Debtor's Plan.

2)      **Disputed, Unliquidated Cambria Company LLC** ("Cambria") filed a proof of claim in the amount of $12,834,110.00 that is disputed by the Debtor and is unliquidated as it pertains to a patent infringement lawsuit filed by Cambria that was ongoing prior to the filing of the within Chapter 11 proceeding. The Debtor Maintains an insurance policy in the amount of $500,000.00 that covers this type of litigation.  The Debtor proposes to provide Cambria with limited stay relief to pursue its claim up to the full extent of the insurance coverage. Cambria's recovery, if any, would be limited to the $500,000.00 insurance policy.

3)      **Disputed Unliquidated-Silica Tort Claimants**: There have been approximately 52 claims filed for $0.00 by this class of creditors.  All claims are disputed by the Debtor and remain unliquidated by claimants. These claims arise from lawsuits filed by these claimants alleging silicosis injuries from the inhalation of dust from natural and artificial stone products. All of these lawsuits were brought in the State of California.

The Debtor operated a distribution center in Anaheim, California where it sold and distributed quartz slabs between 2016 and 2018 capturing a minimal market share during that period. Among the more than 40 defendants named in these lawsuits, the Debtor was the smallest distributor and sold the specified quartz slabs for less than two years. Despite significant efforts, the Debtor has been unable to locate any records indicating sales of the specified quartz products to any of the claimants and/or their employers.

Despite what the Debtor believes is minimal exposure to liability in these cases, the Debtor proposes to pay $681,920.00 to this class of creditors to be paid on a quarterly basis over a period of three years. The Debtor proposes that this dividend shall be shared on a pro-rata basis by this class of creditors.

In the event this class does not agree to equal treatment, the Debtor proposes that claims hearings will be scheduled by the Court and each claimant will be compelled to prove that it has a claim against the Debtor and the extent of that claim. Any claimants with

proven claims will then share in the pro-rata distribution. Claimants are advised that if claims hearings are required to be held that will increase administrative costs, which will be deducted from the proposed base dividend and decrease the funds available for distribution to this class.

In the event the Court deems it prudent, the Debtor further proposes that a Future Claims Representative should be appointed to protect the interests of any future claimants that have yet to be identified.

## ARTICLE 1

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.1.    Nature of the Debtor's Business.

The Debtor, Hirsch Glass Corp. ("Hirsch") is a small business that operates as a distributor of engineered stone servicing the East Coast of the United States.

The Debtor maintains its principal place of business at 115 Melrich Road, Suite 2, Cranbury, New Jersey. The Debtor maintains six distribution centers in Norwood, Massachusetts; Norcross, Georgia; South Brunswick, New Jersey; Charlotte, North Carolina; Orlando, Florida and Chantilly, Virginia.

### 1.2.    History of Business Operations of the Debtor

The Debtor was originally incorporated in October 2005. The Debtor was incorporated in the State of New Jersey.

Hirsch Glass Corp. has since its inception operated as a distribution company for manufactured stone products. Hirsch has serviced the East Coast of the United States as well, as Texas and California.

The Debtor has operated a profitable business for the better part of the past two decades. Although recent economic pressures caused by inflation and other factors have cut into the profitability of the company and caused the Debtor to suffer a loss in 2024 for the first time in many years. The Debtor is cautiously optimistic that economic pressures will lessen and expects a return to profitability in the short term. The Debtor believes that it will be a viable, profitable business capable of paying its employees and owners at market levels of compensation, while also retaining the ability to repay creditors in accordance with the plan we are proposing.

**1.3     Filing of the Debtor's Chapter 11 Case.**

On November 1, 2024, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Trenton, New Jersey.

**1.4.     Legal Structure and Ownership.**

The Debtor is a New Jersey Corporation, having duly incorporated on October 25, 2005.  The Debtor has selected S-Corp. treatment for tax purposes.

Alex Xei is the President and CEO and a two-thirds (2/3) shareholder of the Debtor.  Helen Zhao is the Vice-President and CFO and a one-third (1/30 shareholder of the Debtor. Upon emergence from Chapter 11, Mr. Xei and Ms. Zhao will remain in the current management positions with the Debtor.

**1.5.     Debtor's Assets.**

| Asset | Value | Source of Value |
|---|---|---|
| Chase Bank-Business Account #1238 | $92,934.00 | Bank balance at time of filing petition. |
| Wells Fargo-Business Account #6385 | $26,333.00 | Bank balance at time of filing petition. |
| Bank of America Business Account #9886 | $4,067.92 | Bank balance at time of filing petition. |
| Bank of America Business Account #6993 | $63,943.00 | Bank balance at time of filing petition. |
| Chase Bank-Business Account #5112 | $17,485.00 | Bank balance at time of filing petition. |
| Chase Bank-Business Account #7206 | $41.00 | Bank balance at time of filing petition. |
| Security Deposit-Commercial Office Space | $12,187.18 | Deposit held by Landlord-HM Peach Tree Corners I LLC at time of filing |
| Security Deposit-Commercial Office Space | $22,500.00 | Deposit held by Landlord-537 University Avenue LLC at time of filing |
| Security Deposit-Commercial Office Space | $23,066.76 | Deposit held by Landlord-Pool 6 Industrial NC LLC at time of filing |
| Security Deposit- | $65,025.66 | Deposit held by Landlord- |

| | | |
|---|---|---|
| Commercial Office Space | | NJIND Melrich Road LLC at time of filing |
| Security Deposit-Commercial Office Space | $42,908.00 | Deposit held by Landlord-TGA Chantilly DC LLC at time of filing |
| Security Deposit-Commercial Office Space | $15,413.75 | Deposit held by Landlord-RREEF America REIT II Corp. at time of filing |
| Accounts Receivable-less than 90 days | $1,419,776.00 | Receivables on Debtors books at time of filing |
| Accounts Receivable-over 90 days | $431,853.00 | Receivables on Debtors books at time of filing |
| Finished Goods | $3,270,875.00 | Finished Goods on Debtor's Books at time of filing |
| Miscellaneous furniture | $5,000.00 | Debtor's estimate of market value of furniture at time of filing |
| Miscellaneous Office Equipment | $8,000.00 | Debtor's estimate of market value of equipment (computers and printers, etc.) at time of filing |
| Miscellaneous Vehicles | $864,522 | NADA Replacement Value |
| Miscellaneous machinery and equipment (forklifts) | $176,527.00 | Debtor's estimate of market value of forklifts at time of filing |

### 1.6.    **Debtor's Liabilities.**

| Creditor | Classification | Collateral | Claim Amount |
|---|---|---|---|
| Bank of America #3618 | Secured- | Lien on all business assets | $1,921,658.27 (Claim No. 21) |
| Bank of America #7072 | Secured | Lien on all business assets | $44,255.29 (Claim No. 22) |
| Ford Credit #3724 | Secured- Lien on title | 2019 Ford Transit Connect Van | $25,719.37 (Claim No. 1) |
| Ford Credit #9362 | Secured- Lien on title | 2021 Ford F-550 Super Duty RWD | $26,820.60 (Claim No. 2) |
| Ford Credit #9431 | Secured- Lien on title | 2021 Ford F-550 Super Duty RWD | $27,290.73 (Claim No. 3) |
| Ford Credit #3258 | Secured- Lien on title | 2022 FordF-550 Super Duty RWD | $32,661.56 (Claim No. 4) |
| Ford Credit #5307 | Secured- Lien on title | 2018 ford Transit Connect van | $25,209.26 (Claim No. 5) |
| Ford Credit #9338 | Secured- Lien on title | 2022 FordF-550 Super Duty RWD | $46,773.31 (Claim No. 6) |
| Ford Credit #2718 | Secured- Lien on title | 2022 FordF-550 Super Duty RWD | $46,882.71 (Claim No. 7) |

| Ford Credit #5065 | Secured- Lien on title | 2023 Ford Explorer XLT | $36,915.66 (Claim No. 8) |
|---|---|---|---|
| Ford Credit #3512 | Secured- Lien on title | 2019 Ford F-550 Super Duty RWD | $2,552.78 (Claim No. 9) |
| Ford Credit #0420 | Secured- Lien on title | 2023 Ford Transit Connect | $36,134.12 (Claim No. 11) |
| Ford Credit #3462 | Secured- Lien on title | 2019 Ford F-550 Super Duty RWD | $9,184.35 (Claim No. 12) |
| Ford Credit #4750 | Secured- Lien on title | 2023 Ford F-550 Super Duty DRW | $62,856.65 (Claim No. 13) |
| Ford Credit #4756 | Secured- Lien on title | 2023 Ford F-550 Super Duty RWD | $63,165.90 (Claim No. 14) |
| Ford Credit #9360 | Secured- Lien on title | 2023 Ford F-550 Super Duty RWD | $65,878.32 (Claim No. 15) |
| Ford Credit #5368 | Secured- Lien on title | 2023 Ford F-550 Super Duty RWD | $65,878.32 (Claim No. 16) |
| Wells Fargo Bank d/b/a Wells Fargo Auto | Secured Lien on title | Tesla | $33,289.90 (Claim No. 19) |
| Wells Fargo Bank, N.A. | Secured lien | Crown CA 1000-60 forklift | $15,648.33 (Claim No. 20) |
|  |  |  |  |
| Massachusetts Department of Revenue | Priority | N/A | $21,168.15 (Claim No. 10) |
|  |  |  |  |
| Capital One Business | General Unsecured | N/A | $466.68 (Claim no. 17) |
| JP Morgan Chase Bank | General Unsecured | N/A | $20,687.59 (Claim no. 18) |
| Massachusetts Department of Revenue | General Unsecured | N/A | $1,272.92 (Claim No. 10) |
| The Hartford Financial Services | General Unsecured | N/A | $42,652.84 (Claim No.23) |
|  |  |  |  |
| Cambria Company LLC | General Unsecured Disputed and unliquidated | N/A | $12,834,110.00 (Claim No. 107) |
| Various tort claimants | General Unsecured Disputed and Unliquidated | N/A | $0.00 (Claim nos. 25-106) |

### 1.7. <u>Current and Historical Financial Conditions.</u>

The Debtor has been running a profitable glass tile and engineering stone distribution company for close to two decades. Unfortunately, COVID, supply chain issues and recent inflation has had a negative impact on the industry as a whole and the

Debtor's business, in particular. The Debtor's revenue increased from 2020 through 2022 before beginning to decline somewhat in 2023.  However, Debtor's cost of goods and overhead increases outpaced revenue causing a tightening of margins and decreased net revenue.

This pattern has culminated in the Debtor showing a loss in 2024 for the first time. Coupled with the Debtor being named as a defendant in a multitude of tort cases in the State of California, in which, the Debtor had to litigate though it maintains it has limited, if any, potential liability prompted the Debtor to seek bankruptcy relief.

### Debtor's Recent Historical Revenue, Expense & Profitability

|  | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| Gross Revenue | $14,276,990.00 | $17,694,625.00 | $24,101,308.00 | $21,400,558.00 | $17,812,373.00 |
| Total Expenses | $13,232,111.00 | $16,176,167.00 | $23,575,756.00 | $20,553,973.00 | $19,540,024.00 |
| Net Profit | $1,044,879.00 | $1,518,458.00 | $525,552.00 | $846,585.00 | (1,341,651.00) |

### 1.8.    Events Leading to the Filing of the Bankruptcy Case.

The Debtor's financial difficulties date back to April 2020 when the government mandated COVID lockdowns shut down the Debtor's entire industry.  COVID, supply chain issues and recent inflation has had a negative impact on the industry as a whole and the Debtor's business, in particular.   The Debtor's revenue increased from 2020 through 2022 before beginning to decline somewhat in 2023.  However, Debtor's cost of goods and overhead increases outpaced revenue causing a tightening of margins and decreased net revenue.

This pattern has culminated in the Debtor showing a loss in 2024 for the first time. The increased cost of doing business was exacerbated  by the Debtor being named as a defendant in a multitude of silica tort cases in the State of California, in which, the Debtor had to litigate though it maintains it has limited, if any, potential liability.

The lawsuits allege silicosis injuries sustained by the claimants from working with and inhaling the dust from certain manufactured quartz slabs. The Debtor has never been a manufacturer of quartz slabs as its business operations since inception has solely been the distribution of stone products. The Debtor is a named defendant in these lawsuits due to the potential that it had distributed the quartz slabs to claimants and/or claimant's employers.

The Debtor only distributed the quartz slabs in question for a two-year period between 2016 and 2018 before ceasing its distribution of the product. The Debtor shut down its distribution center in Anaheim, California in 2022. While the Debtor was operating in California it was the smallest distributor in the State and had a minimal market share. The Debtor has searched its entire database and has been unable to locate any records that would indicate the Debtor has sold or provided any of the specified quartz products to the claimants and/or the claimants' employers.

Thus, despite its de minimis exposure to liability the cost of defending these lawsuits, as the Debtor was attempting to get back to normal cash flow levels, was too difficult for the Debtor to overcome, thus the Debtor had no choice but to seek protection under Chapter 11 of the United States Bankruptcy Code.

### 1.9.    Significant Events During the Bankruptcy Case.

- First Day Motions for Use of Cash Collateral, Authorization to Pay all Pre-Petition Payroll Obligations and Authorization for Continued Use of Existing Bank Accounts were filed on November 4, 2024, and granted by the Court.
- An Application to appoint Gillman Capone, LLC as counsel for the Debtor was filed on November 1, 2024, and has been approved by the Bankruptcy Court.
- An Initial Debtor Interview was conducted by the United State Trustee's Office on November 20, 2024.
- The 341a Meeting of Creditors was held on December 12, 2024.
- The Final Order Allowing Use of Cash Collateral was entered on December 26, 2024.
- The First Monthly Operating Report for November was filed on December 27, 2024 and the Second Monthly Operating Report for December was filed on January 27, 2025.

### 1.10.    Projected Recovery of Avoidable Transfers

The Debtor has reviewed pre-petition transactions and does not anticipate filing any avoidance actions.

**ARTICLE
2**

**THE PLAN**

14

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

### 2.1. __Unclassified Claims.__

Certain types of Claims are automatically entitled to specific treatment under the Code.  For example, Administrative Expenses and Priority Tax Claims are not classified.  They are not considered impaired, and holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

A.    Administrative Expenses

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the

Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | **$0.00** | **N/A** |
| Administrative Tax Claim | **$0.00** | **N/A** |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | **$0.00** | **N/A** |
| Professional fees, as approved by the Bankruptcy Court<br><br>**Gillman, Bruton & Capone, LLC** | Total estimated fees/costs of: $75,000.00.  Retainer of $30,000.00 received pre-petition.<br><br>**$45,000.00-**balance to be paid by the Debtor upon the Effective Date of the Plan. | After Bankruptcy Court approval, Payment through the Plan as follows:<br>**$45,000.00**  to be paid from funds on hand upon Effective Date of Plan. |

16

| Clerk's Office fees | **$0.00** | Paid in full at time of filing of petition. |
|---|---|---|
| Trustee<br><br>**Brian Hofmeister, Esq**. | **$ 10,000.00** | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows:<br>The amount of **$10,000.00** to be paid upon the Effective Date of the Plan. |
| TOTAL | **$55,000.00** | |

      B.     Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|

| Massachusetts Department of Revenue | $21,168.15-sales tax for first 3 quarters of 2024 | N/A | | Massachusetts Department of Revenue has been brought current post-petition by the Debtor and will continue to receive regular quarterly tax payments moving forward. |
|---|---|---|---|---|

### 2.2   Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

A.  Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured pre-petition
Claims and their proposed treatment under the Plan:

| Class | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|

18

| 1 | *Secured claim of*: **Bank of America** Collateral description = **UCC Lien on all equipment, accounts and property of Debtor** Allowed Secured Amount = **$ 1,921,658.27** Priority of lien = **1st Lienholder** Principal owed = **$ 1,921,658.27** Pre-pet. arrearage = **$ 0.00** Total claim = **$ 1,921,658.27** | NO | IMPAIRED | Bank of America shall be paid its allowed secured claim with direct payments from the Debtor and/or related parties.

Current Balance: Prior to the filing of the Debtor's petition and the expiration of the Note, the Parties had entered into a Forbearance Agreement whereby the Debtor was to make monthly payments of $211,111.11 plus accrued interest to Bank of America beginning in November 2024 with the final balloon payment to be made on April 1, 2025.

The Debtor has made post-petition installment payments to Bank of America pursuant to the terms of the Forbearance Agreement.  Accordingly, pursuant to the terms of the Forbearance Agreement the Debtor believes there is a principal balance of $1,283,933.18 remaining on the Note.

 Repayment: The secured claim shall be paid as follows:

 (a) the balance remaining on the Note in the approximate amount of $1,283,933.18 shall be paid over a six (6) month period beginning in February 2025.

(b) Monthly principal payments of $211,111.11 plus accrued interest (based on the rate per year equal to the Term SOFR Daily Floating Rate plus the number of percentage points stated in the Transaction Summary)  shall be made directly by the Debtor to Bank of America.

(c)the final principal and interest payment shall be made in July 2025. |

19

| 2 | *Secured claim of*: **Bank of America**<br><br>Collateral description<br><br>= **UCC Lien on all**<br><br>**equipment,**<br><br>**accounts and**<br><br>**property of Debtor**<br><br>Allowed Secured<br><br>Amount =**$44,255.29**<br><br>Priority of<br><br>lien = **2nd**<br><br>**Lienholder**<br><br>Principal<br><br>owed =<br>**$ 44,255.29**<br><br>Pre-pet. arrearage =<br>**$ 0.00**      Total claim =<br><br>**$44,255.29** | **NO** | **IMPAIRED** | Bank of America shall be paid its allowed secured claim with direct payments from the Debtor.<br><br>Current Balance: Prior to the filing of the Debtor's petition and the expiration of the Note, the Parties had entered into a Forbearance Agreement whereby the Debtor was to make regular monthly payments of  principal and interest to Bank of America beginning in November 2024 with the final balloon payment to be made on April 1, 2025.<br><br>Repayment: The secured claim shall be paid as follows:<br><br> (a) the balance remaining on the Note in the approximate amount of $44,255.29 shall be paid over a six (6) month period beginning in February 2025.<br><br>(b) the final principal and interest payment shall be made in July 2025 |

| | | | | |
|---|---|---|---|---|
| 3 | *Secured claim of*: **Ford Credit (#3724)** Collateral description = **Certificate of Title Lien Notice on '19 Ford Transit Connect Van** Allowed Secured Amount =**$25,719.37** Priority of lien = **1st Lienholder** Principal owed = **$ 25,719.37** Pre-pet. arrearage = **$ 0.00**    Total claim = **$ 25,719.37** | NO | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$25,719.37** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit. |

21

| 3 | *Secured claim of*: **Ford Credit (#9362)** Collateral description = **Certificate of Title Lien Notice on '21 Ford F-550 Super Duty RWD** Allowed Secured Amount = **$ 26,820.60** Priority of lien = **1st Lienholder** Principal owed = **$ 26,820.60** Pre-pet. arrearage = **$ 0.00** Total claim = **$ 26,820.60** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$26,820.60** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit. |

| 3 | *Secured claim of*: **Ford Credit (#9431)** Collateral description = **Certificate of Title Lien Notice on '21 Ford F-550 Super Duty RWD** Allowed Secured Amount = **$ 27,290.73** Priority of lien = **1st Lienholder** Principal owed = **$ 27,290.73** Pre-pet. arrearage = **$ 0.00** Total claim = **$ 27,290.73** | NO | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$27,290.73** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit. |

| 3 | *Secured claim of*: **Ford Credit (#3258)**<br><br>Collateral description = **Certificate of Title Lien Notice on '22 Ford F-550 Super Duty RWD**<br><br>Allowed Secured Amount = **$ 32,661.56**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 32,661.56**<br><br>Pre-pet. arrearage = **$ 0.00**    Total claim = **$ 32,661.56** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$32,661.56** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

24

| 3 | *Secured claim of*: **Ford Credit (#5307)** <br><br> Collateral description = **Certificate of Title Lien Notice on '18 Ford Transit Connect Van** <br><br> Allowed Secured Amount = **$ 25,209.26** <br><br> Priority of lien = **1st Lienholder** <br><br> Principal owed = **$ 25,209.26** <br><br> Pre-pet. arrearage = **$ 0.00**     Total claim = **$ 25,209.26** | NO | NOT IMPAIRED | Ford Credit shall be paid its allowed secured claim in the amount of **$25,209.26** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| 3 | *Secured claim of*: **Ford Credit (#9338)**<br><br>Collateral description = **Certificate of Title Lien Notice on '22 Ford F-550 Super Duty RWD**<br><br>Allowed Secured Amount = **$ 46,773.31**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 46,773.31**<br><br>Pre-pet. arrearage = **$ 0.00**    Total claim = **$ 46,773.31** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$46,773.31** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

26

| 3 | *Secured claim of*:<br>**Ford Credit (#2718)**<br><br>Collateral description =<br>**Certificate of Title Lien Notice on '22 Ford F-550 Super Duty RWD**<br><br>Allowed Secured Amount =<br>**$ 46,882.71**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed =<br>**$ 46,882.71**<br><br>Pre-pet. arrearage =<br>**$ 0.00**     Total claim =<br>**$ 46,882.71** | NO | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$46,882.71** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| 3 | *Secured claim of*: **Ford Credit (#5065)**<br><br>Collateral description = **Certificate of Title Lien Notice on '23 Ford Explorer XLT**<br><br>Allowed Secured Amount = **$ 36,915.66**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 36,915.66**<br><br>Pre-pet. arrearage = **$ 0.00**     Total claim = **$36,915.66** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$36,915.66** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| 3 | *Secured claim of*: **Ford Credit (#3512)**<br><br>Collateral description = **Certificate of Title Lien Notice on '19 Ford F-550 Super Duty RWD**<br><br>Allowed Secured Amount = **$ 2,552.78**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 2,552.78**<br><br>Pre-pet. arrearage = **$ 0.00** Total claim = **$ 2,552.78** | NO | NOT IMPAIRED | Ford Credit shall be paid its allowed secured claim in the amount of **$2,552.78** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| 3 | *Secured claim of*: **Ford Credit (#0420)**<br><br>Collateral description = **Certificate of Title Lien Notice on '23 Ford Transit Connect**<br><br>Allowed Secured Amount = **$ 36,134.12**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 36,134.12**<br><br>Pre-pet. arrearage = **$ 0.00**   Total claim = **$ 36,134.12** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$36,134.12** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| 3 | *Secured claim of*: **Ford Credit (#3462)** <br><br> Collateral description = **Certificate of Title Lien Notice on '19 Ford F-550 Super Duty RWD** <br><br> Allowed Secured Amount = **$ 9,184.35** <br><br> Priority of lien = **1st Lienholder** <br><br> Principal owed = **$ 9,184.35** <br><br> Pre-pet. arrearage = **$ 0.00**     Total claim = **$ 9,184.35** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$9,184.35** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

31

| 3 | *Secured claim of*: **Ford Credit (#4750)** Collateral description = **Certificate of Title Lien Notice on '23 Ford F-550 Super Duty RWD** Allowed Secured Amount = **$ 62,856.65** Priority of lien = **1st Lienholder** Principal owed = **$ 62,856.65** Pre-pet. arrearage = **$ 0.00** Total claim = **$ 62,856.65** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$62,856.65** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| | | | | |
|---|---|---|---|---|
| **3** | *Secured claim of*: **Ford Credit (#4756)**<br><br>Collateral description = **Certificate of Title Lien Notice on '23 Ford F-550 Super Duty RWD**<br><br>Allowed Secured Amount = **$ 63,165.90**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 63,165.90**<br><br>Pre-pet. arrearage = **$ 0.00**    Total claim = **$ 63,165.90** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$63,165.90** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

33

| 3 | *Secured claim of*: **Ford Credit (#9360)** <br><br> Collateral description = **Certificate of Title Lien Notice on '23 Ford F-550 Super Duty RWD** <br><br> Allowed Secured Amount = **$65,878.32** <br><br> Priority of lien = **1st Lienholder** <br><br> Principal owed = **$ 65,878.32** <br><br> Pre-pet. arrearage = **$ 0.00** Total claim = **$ 65,878.32** | NO | NOT IMPAIRED | Ford Credit shall be paid its allowed secured claim in the amount of **$65,878.32** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

34

| 3 | *Secured claim of*: **Ford Credit (#5368)**<br><br>Collateral description = **Certificate of Title Lien Notice on '23 Ford F-550 Super Duty RWD**<br><br>Allowed Secured Amount = **$ 65,878.32**<br><br>Priority of lien = **1st Lienholder**<br><br>Principal owed = **$ 65,878.32**<br><br>Pre-pet. arrearage = **$ 0.00** Total claim = **$ 65,878.32** | **NO** | **NOT IMPAIRED** | Ford Credit shall be paid its allowed secured claim in the amount of **$65,878.32** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Ford Credit |

| 3 | *Secured claim of*: **Wells Fargo Bank d/b/a Wells Fargo Auto**<br><br>Collateral description = **Certificate of Title Lien Notice on '22 Tesla Model Y**<br><br>Allowed Secured Amount = **$33,289.90**<br><br>Priority of lien= **1st Lienholder**<br><br>Principal owed = **$ 33,289.90**<br><br>Pre-pet. arrearage = **$ 0.00** Total claim = **$ 33,289.90** | **NO** | **NOT IMPAIRED** | Wells Fargo Bank. shall be paid its allowed secured claim in the amount of **$33,289.90** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Wells Fargo Bank |

| 3 | *Secured claim of*: **Wells Fargo Bank**<br><br>Collateral description = **Secured Lien on Crown CA 1000-60 Forklift**<br><br>Allowed Secured Amount = **$15,648.33**<br><br>Priority of lien= **1st Lienholder**<br><br>Principal owed = **$ 15,648.33**<br><br>Pre-pet. arrearage = **$ 0.00**    Total claim = **$ 15,648.33** | **NO** | **NOT IMPAIRED** | Wells Fargo Bank. shall be paid its allowed secured claim in the amount of **$15,648.33** together with interest, as the Debtor will continue to make regular monthly payments pursuant to the Note directly to Wells Fargo Bank |

| | | | | |
|---|---|---|---|---|
| **4** | *Secured claim of*:<br>**Ceejay Remodeling LLC**<br><br>Collateral description =<br>**Judgment lien**<br><br>Allowed Secured Amount = **$8,000.00**<br><br>Priority of lien= **1st Lienholder**<br><br>Principal owed =<br>**$ 8,000.00**<br><br>Pre-pet. arrearage =<br>**$ 0.00** Total claim =<br>**$ 8,000.00** | **YES** | **IMPAIRED** | To the extent that Ceejay Remodeling LLC has perfected its judgment lien, such lien is subject to the prior liens on all of Debtor's business assets held by Bank of America.  Accordingly, its judgment lien shall be stripped off and treated as a Class 5 general unsecured creditor. |

### B.  Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|

| | N/A | | |
|---|---|---|---|

### C.  Class[es]of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class 4 ,  __ which contain general unsecured claims against the Debtor;

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | [1122(b) Convenience Class]<br><br>**Undisputed Liquidated General Unsecured Creditors** | NO | The Debtor estimates that the undisputed, liquidated general unsecured creditor class totals **$73,080.03**.  This class shall be paid in full within 420 days of the Effective Date of the Plan. |

| 6 | General Unsecured Class [including any claims set forth in Section 2.2.A, above]- <br><br> Disputed, Unliquidated <br><br> **Cambria Company, LLC** | **IMPAIRED** | Cambria Company LLC ("Cambria") filed a proof of claim in the amount of $12,834,110.00 that is disputed by the Debtor and is unliquidated as it pertains to a patent infringement lawsuit filed by Cambria that was ongoing prior to the filing of the within Chapter 11 proceeding. <br><br> The Debtor Maintains an insurance policy in the amount of $500,000.00 that covers this type of litigation. The Debtor proposes to provide Cambria with limited stay relief to pursue its claim up to the full extent of the insurance coverage. Cambria's recovery if any, would be limited to the $500,000.00 insurance policy. |

| 7 | General Unsecured Class [including any claims set forth in Section 2.2.A, above]- <br><br> Disputed and Unliquidated <br><br> **Silicosis Tort Claimants** | **IMPAIRED** | There have been approximately 52 claims filed for $0.00 by this class of creditors. All claims are disputed by the Debtor and remain unliquidated by claimants. <br><br> These claims arise from lawsuits filed by these claimants alleging silicosis injuries from the inhalation of dust from natural and artificial stone products. <br><br> All of these lawsuits were brought in the State of California. <br><br> The Debtor operated as a distribution center in Anaheim, California where it sold and distributed quartz slabs between 2016 and 2018 capturing a minimal market share during that period. Among the more than 40 defendants named in these lawsuits, the Debtor was the smallest distributor and sold the specified quartz slabs for less than three years. <br><br> Despite significant efforts, the Debtor has been unable to locate any records indicating sales of the specified quartz products to any of the claimants and/or their employers. <br><br> Despite what the Debtor believes is minimal exposure to liability in these cases, the Debtor proposes to pay $ 681,920.00 to this class of creditors to be paid on a quarterly basis over a period of three years. <br><br> The Debtor proposes that this dividend shall be shared on a pro-rata basis by this class of creditors. <br><br> In the event this class does not agree to equal treatment, the Debtor proposes that claims hearings will be scheduled by the Court and each claimant will be required to prove it has a claim against the Debtor and the extent of that claim. Any proven claims will then share in the pro-rata distribution. Claimants are advised that if claims hearings are required that will increase administrative costs and decrease the funds available for distribution to this class. <br><br> In the event the Court deems it prudent, the Debtor further proposes that a Future Claims Representative will be appointed to protect the interests of any future claimants that have yet to be identified. |

D.  Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company ("LLC"), the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 8 | Alex Xei- 66.66% shareholder | Yes | Mr. Xei will receive no distribution under the Plan other than retaining his ownership interest in the Debtor. |
| 8 | Helen Zhao- 33.33% shareholder | Yes | Ms. Zhao will receive no distribution under the Plan other than retaining her ownership interest in the Debtor. |

### 2.3.  Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.  If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| **6** | 1 | $12,834,110.00 |
| **7** | 52 | $0.00 |

### 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract.  The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval.  The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

[**X**]  Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit E** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.  **Exhibit E** also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ]  Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit_____shall be assumed by the Debtor and assigned to the party listed in that Exhibit.   Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and

assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts with shown on **Exhibit** _____ shall be rejected by the Debtor. Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on **Exhibit** ____, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is 30 days from the date of the entry of Order Rejecting Contracts** . Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

### 2.5. Means for Implementation of the Plan.

The Debtor shall use the estimated funds on hand upon the Effective Date of the Plan to make the initial distributions for Administrative Expenses and the initial plan payment.

Additionally, the Debtor shall use its disposable income, as defined by Section 1129(a)(15) and as illustrated in the Cash Flow Projections, annexed hereto as **Exhibit A**, to make its monthly payments under the Plan. The Debtor has reduced its payroll expenses moving forward, as reflected in the Cash Flow Projections, so that it may better provide for a distribution to the disputed, unliquidated class of General Unsecured Creditors.

Additionally, the Debtor has negotiated payment terms with its supplier to allow payment within nine (9) months of being invoiced. This allows the Debtor to better control its cash flow during its slower winter months and stay on schedule with its proposed distributions to creditors.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the

Debtor.  The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws,  as each of the same may be amended from time to time.

[Additional provisions, if any, for implementing the plan can be inserted here, including provisions necessary to comply with Section 1191(c)(3)(B).]

### 2.6.    **Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Debtor shall make all Plan payments to creditors under the Plan.

### 2.7.    **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| **Alex Xei** | CEO | $ 16,616.25 /month |
| **Helen Zhao** | CFO | $ 8,300.00 /month |
| **Perry Xei** | VP of Operations | $ 8,300.00/month |
| **Jonathan Xei** | VP of Sales | $ 8,300.00/month |

### 2.8.    **Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtors.  The

Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

### 2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan

Debtor has provided projected financial information. Those projections are listed in **Exhibit A .**

### ARTICLE 3
### FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 3.1.   Ability to Initially Fund Plan.

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as **Exhibit B.**

### 3.2.   Ability to Make Future Plan Payments And Operate Without Further Reorganization.

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in **Exhibit A** (referenced in § 2.9, above).

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow over the three-year plan term, after paying operating expenses and post- confirmation taxes, of **$ 110,934.00**. The final Plan payment is expected to be paid in December 2027

The Debtor is projecting revenue to increase by approximately 8%  from year One of the Plan to the final year of the Plan.  Cash restraints will limit growth to the 8% estimate over the next three years, as all projected net revenue will be used to fund the Plan. Accordingly, the projections do not project any increase in staff.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## <u>LIQUIDATION ANALYSIS.</u>

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as **Exhibit  C** .

## ARTICLE 5
## <u>DISCHARGE.</u>

<u>Discharge.</u> **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 6
## <u>GENERAL PROVISIONS.</u>

6.1.     <u>Title to Assets.</u>

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of

commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.    **Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    **Severability.**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    **Retention of Jurisdiction by the Bankruptcy Court.**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5.    **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. <u>Modification of Plan.</u>

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. <u>Final Decree.</u>

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7**
**<u>ATTACHMENTS</u>**

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[ ]      Debtor's Assets at Fair Market Value, annexed as Exhibit ____.
[ ]      Debtor's Liabilities, annexed as Exhibit ____.
[**X**]    Financial forecast for the Debtor, annexed as **Exhibit A** .
[ ]      Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit ___.
[X]      Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as **Exhibit D** .
[ ]      Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.
[**X**]    Executory Contracts and Unexpired Leases, to be Assumed annexed as **Exhibit E** .
[ ]      Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.
[**X**]    Executory Contracts and Unexpired Leases to be Rejected, annexed as **Exhibit F** .

[**X**]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as **Exhibit B**

[**X**]    Liquidation Analysis, annexed as **Exhibit C**

## ARTICLE 8
## FREQUENTLY ASKED QUESTIONS

**What Is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**  In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor.  If you do not have any collateral, your claim is unsecured.  The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2, Section 2.2 lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization  Important?**  Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan.  If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization ?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class.  If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and

is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings.  Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Article 2, Section 2.2 identifies which claims are impaired.  If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**  The Plan is being distributed to all claim holders for their review, consideration and approval.  The deadline by which ballots must be returned is _____.  Ballots should be mailed to the following address: Gillman  Capone, LLC, 60 Highway 71, Spring Lake Heights, NJ 07762

**How Do I Determine When and How Much I Will Be Paid?** In Article 2, Section 2.2 the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9

## DEFINITIONS

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.    Administrative Claimant**: Any person entitled to payment of an

51

Administration Expense.

**9.3.**    **Administrative Convenience Class:**    A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.**    **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses

of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5**    **Administrative Tax Claim**:  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.**    **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.**    **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.**    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

**9.9.**    **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.**    **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.**    **Bankruptcy Court**: The United States Bankruptcy Court for the District of New Jersey.

**9.12.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

**9.13.** **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.** **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Hirsch Glass Corp. is the Debtor-in-Possession.

**9.15 Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19. Confirmation Hearing**: The hearing to be held on _____, 2025 to consider confirmation of the Plan.

**9.20. Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.21. Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22. Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.23. Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24. Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25. Effective Date**: Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26. Equity Interest**: An ownership interest in the Debtor.

**9.27.   Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.   IRC**: The Internal Revenue Code

**9.30.   Petition Date**: November 1, 2024, the date the chapter 11 petition for relief was filed.

**9.31.   Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.   Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.   Reorganized Debtor**: The Debtor after the Effective Date.

**9.34.   Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.   Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.   Trustee**:  Brian Hofmeister, Esq., the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.   Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

By: **/s/Helen Zhao**
       HELEN ZHAO, CFO
       Hirsch Glass Corp. , Debtor-In-Possession

55